Our fourth case for this morning is Berg v. New York Life Insurance Company. Mr. Flom. May it please the Court, Stephen Flom for Eric Berg. We're here this morning on an appeal from the entry of summary judgment against Mr. Berg on his breach of contract claims for sums owed under disability income insurance policies issued by New York Life. There are two key issues before the Court. First, whether Mr. Berg's regular job at the time his disability started was that of a pit broker at the mercantile exchange or that of an unemployed person as the district court held. I'm confused that we're given this binary choice because I certainly understand and want to talk about the idea about when onset ought to be measured. But looking at Mr. Berg's history after 2007, September 2007, it seems that it's really more accurate to call him you know a financial industry expert or something like that. People can be a pit broker, he did day traded, he did other things. Isn't pit broker a little narrow? No, Your Honor, because the evidence is uncontroverted that at the time Mr. Berg stopped working at the mercantile exchange due to the tremor that prevented him from performing the material and substantial duties of that job, he was continuously unable to perform those responsibilities after that. And indeed, as of the time... He went to work for somebody else a few months later, right? No, Your Honor, he had dabbled as a hobby in electronic trading, but even the insurer recognized that that didn't constitute a job. So the facts here are uncontroverted that Mr. Berg held no other job, much less a regular job, between the time when he was forced to stop trading at the merc and when he, for that matter, even applied for benefits under the policy. And the first key principle that is, we think, dispositive of the case and that we would ask the court to include in its ruling is that when an insured, under a policy like this, which is based on the regular job, when the insured is forced to stop working that regular job due to a disability and is never able to perform that job again, is continuously disabled from that regular job, then the regular job never changes. I don't understand what significance this has independent of the question about the onset date. If the insurer is correct that the onset date is someplace in 2010, February 2010, does how they describe his job have any independent significance? It does, Your Honor, because certainly it makes it easier in this particular case, because once one recognizes that his regular job was that when he was unable to work at the mercantile exchange. Could you be concrete, under the terms of this policy, what significance does the identification of his job have if the insurer is right that the earliest onset date is the first date of medical care? The significance is that it makes it clear that his regular job. I'm asking you to refer me to some language in the policy on which this turns. The definition of regular job, Your Honor? Does the amount he gets paid per month change, depending on whether he was unemployed or whether he was a pit broker? It does not. That's why I was written down that his job is an astronaut, so far as I can see, and it just didn't affect it. The benefit is $6,000 a month? That's correct. And that just is independent of what they write down as his job. So it seems to me that the issue we need to resolve is whether they're right to think that payments can't extend back before February of 2010. If we get that right, we've That's the second issue. At a minimum, that's the second issue in the case. It looks to me like the only issue in the case. And so why don't we turn to that question? And I guess I really have two thoughts about it. One is whether there is some kind of temporal element in this policy. It's got to be a condition that requires and receives regular care, but does that mean that the isn't a condition until the physician has diagnosed it, or does that mean that that's the type of condition? And the other question is whether there's any significance to the length of time that passed between when he quits the job because of the tremor and when he actually does seek medical help. To answer the first question, Judge Wood, the policy is not conditioned on seeing a physician in order for the entitlement to disability benefits to be given. So it's describing a type of condition, not a duty of the person or not a trigger date, in your opinion. Right. When the policy defines the word sickness to refer to a condition that requires and receives the treatment of a physician, the regular care of a physician, it doesn't necessarily mean, as the defendants have suggested and as the district court held, that you are not even disabled until a physician says that you are. So some conditions don't require medical intervention. We all get the common cold from time to time and most of us don't go rushing off to a doctor for that. So you understand requires and receives as some signal of the severity of the condition. It's certainly, yes, Your Honor, and it's certainly an indication that before you can receive... Well, there's no question that essential tremor requires medical attention, but that doesn't mean people always get it. One thing, most people, when they first have a symptom of some sort, they hope it goes away. They don't want to go to a doctor. Well, that was his situation. That's exactly right, and that was Mr. Burt's situation. He thought maybe it's tremors, because if you're drinking too much coffee or something, it'll go away. That's exactly right. I think your position is that the only significance of this provision of policy is there must be proof that he had a disabling condition at the outset of the period he needs to establish. That's correct, Your Honor. And what did the doctor say about that? So he eventually goes to see a doctor. And I would think, just as it is in the Social Security disability cases, it would be of some significance if the doctor said, you know, when did this start happening, and he said yesterday, or the doctor said it couldn't be this severe if it hadn't been around for a while. Does the doctor offer any opinion about the duration? He has some other evidence about duration, right? He's got people who testify that he had the tremor. That's correct. That's correct. What about medical evidence? There's no direct medical evidence as to what his condition was when he stopped working at the Mercantile Exchange, but there is a clear inference. He had an organic condition that even the independent medical examiner, who was hired by the insurance company, recognized, and that same independent medical examiner, Dr. Slavik, expressly noted that that condition restricts or limits his ability to do his job. So in terms of going back to when he left the Merc, the evidence is uncontroverted, that his condition prevented him then, as it did at the time when he was seen by the physicians, from writing down information as is required to act as a pit broker at the Mercantile Exchange. That evidence came in the form of Mr. Berg's own testimony. It was corroborated by his assistant, who observed he wasn't able to write it down on cards in the pit. He had to go outside the pit, put the cards down on a piece of paper, sometimes steady his hand, his left hand that he wrote with with his right hand. So there was independent corroborating information, certainly, that the same condition that was diagnosed when he was seen by physicians in 2010 was precisely the same condition that he had when he left the floor. But the issue before this Court, ultimately, we're not asking the Court to say precisely at what point in time Mr. Berg became entitled to insurance benefits. It will ultimately be the burden for Mr. Berg on remand to show the point in time at which he was unable to perform the substantial and material duties of his job. And we think we can show, and the evidence is already uncontroverted, that indeed it was when he felt forced to stop trading at the Mercantile Exchange. So you're just arguing against the District Court's interpretation that it's the day you show up in the doctor's office. That is the second issue, Your Honor, and the first disagreement. Or as Judge Easterbrook put it, the first issue. Yes, or maybe the only issue, and if it's the only issue, that's one more. I said it was the only issue, but the insurer has invoked the time limit in its policy. It says the claim has to be made within 30 days of the date disability begins, and a proof of claim has to be filed within 90 days. I think you need to address that argument. Thank you, Your Honor. They have indeed invoked it, but they shouldn't have because it's not before the Court. It is before the Court because it's been invoked. Now you may say in your reply brief that it was forfeited in the District Court, and that's how we should resolve it. But if I understand your reply brief, your reply brief says that a timeliness argument was presented in the District Court via a motion to narrow the issues, and that the District Judge then simply ignored it. Why would that be a forfeiture? Because they then moved for summary judgment. We're here, of course, on an appeal from the entry of summary judgment. In their motion for summary judgment, they simply relied on the grounds that the District Court asserted in his opinion ruling on the motion to narrow issues. No, that was a somewhat unusual procedure, by the way. That Rule 16 exercise. But you think that they should have renewed this point in the summary judgment motion if they wanted to preserve it. Usually they don't say that to preserve an issue you have to raise it twice if the District Judge ignores it the first time. We don't have a rule you have to badger the District Judge. Well, but the first ruling did not result in the decision of an entire claim for relief. But it was just a case management ruling is what you want to say. The first ruling, and thus not the kind of dispositive thing that waiver would turn on. That's right. They needed to raise it in their summary judgment motion if they wanted to ask this Court to rule on that issue. And when the time comes to rule on that issue, the issue will ultimately come down to one of reasonableness. Even the policy itself says that if you don't submit a claim within 30 days, you have to submit it within a reasonable period of time. So the policy itself has a backup? The policy is a backup, and Illinois law is a second backup, which reiterates the reasonableness concept. Certainly the record before this Court does not allow any determination as a matter of law regarding the reasonableness of the time at which Mr. Berger submitted his claim. Which did come, by the way, within 30 days of when he first saw the physician who diagnosed his condition. So we don't have any issue at all regarding notice unless the Court agrees with us, and we certainly hope and believe that you will, that he's entitlement to benefit. Yes, it is delicious, after a fashion, that if the insurer's view of when the disability began is correct, the claim is timely. And if Mr. Berger's view of when the disability began is correct, then the claim is not timely. Or under the reasonableness. We will rely on the reasonableness, Your Honor, that's right. All right, thank you, Mr. Slom. Mr. Von Schleicher. Good morning. My name is Warren Von Schleicher, and I'm counsel for Defendants New York Life and Uniform Life Insurance. Counsel, I'm worried about how far you take your own position, that to qualify for benefits, the person must be, not just have seen a physician, but be under a physician's care. Suppose an industrial accident had amputated both of Mr. Berger's hands, so he could obviously no longer write order tickets. That would obviously require immediate care. But after a few months, it wouldn't require any more care, because there's nothing more the medical profession could do. And care would then cease. In your view, would disability benefits then cease, because there was no longer any ongoing care? I think that the nature of the physician's care that's required... There's nothing in the contract about the nature of the care. You're just saying we should take the language at face value and say, you have to be... It says, the language is, requires and received regular care by a physician. So in the hypothetical I just gave, regular care by a physician would cease. And therefore, I would think, on your argument, the benefits would stop too, because the disability stops when it no longer receives regular care by a physician. I wonder if that's what you really believe. To an extent. I think regular care is dependent, because a regular care, for example, for a disabling cancer would be... Could we just stick with Judge Easterbrook's hypothetical, though? This is the person who doesn't have hands anymore, and the stump is healed, and the doctor says, we're done. So there is no more regular care. And that person, you're saying, you're going to cut off benefits too. Well, there's two responses to that. There does need to be some contact, some consultation, ongoing consultation with the physician. Why? I don't get that. It serves an evidentiary function. No, it doesn't make sense. There are lots of situations in which people become disabled, and they don't know why, and so on, and they're reluctant to visit a doctor. I would think... Or they don't have the money. What the insurance company should want is medical proof that this person became disabled. It doesn't matter whether the medical proof is from a doctor who treated him the day after he noticed a tremor in his hands, or whether it comes years later. Suppose the doctor looks at this guy and the evidence about how he couldn't write, couldn't do his job as a pit broker, and suppose the doctor would say, look, it's obvious this person got a central tremor, and he couldn't use his hands, basically. Why isn't that enough? There is a provision in the claims manual that was argued by Mr. Berg in the district court that provides for an investigation, an inquiry, when there is no physician's care, to determine what were the circumstances. So that means that it's really the only sensible reading of this language and the policies to describe the type of alleged disabling condition, not the date when you show up in the doctor's office. I'm going to point out to you, even the district judge didn't really believe that the date you show up in the doctor's office was important, because on page 9 of his first memorandum, the one on the rule 16, whatever it was, he says at the top of page 9, to be sure, in some cases, injured claimants will be unable, for reasons that are really beyond their control, to seek treatment for a significant period of time following the onset of their disabilities, and then the critical language, and perhaps the policies could be construed in such situations to encompass such claimants from the date of their injuries, rather than from the later date when they finally receive care. Well, if you're going to go that far, you're done. He says, well, this guy didn't do that, but that doesn't mean he agrees with your reading of the policy, actually. I think in order to receive benefits under this policy, there does need to be consultation with the physician. Well, but that's a different question from the onset date. That's not even what the policy says. It's an illness that requires regular care by a physician. Now, you can have an ailment that requires that care, but you don't get the care, right? Yes, that's correct. You're told you must go to a doctor with your trembling hand, and you say, no, I've been drinking a lot of coffee, I don't want to go to a doctor. The policy does require that to qualify as a sickness, Yes, a condition that requires a physician, but people don't always do everything that they're required to do. That's true, they don't, but in seeking benefits under a contract. But here's the deal. First of all, there's the requires point. I know the word receives is in there too, but I just don't see why that should be understood to dictate onset date. Onset date is a completely different question from what is wrong with you. What illness do you have? Answer, essential tremor. There's no question. Neurologists have diagnosed him with that. The independent person says, yes, that's what you have. There's a certain amount that can be done for it, although not a huge amount. But that doesn't tell you the onset date. The onset date is a matter of evidentiary proof. The policy's definition of total disability does say that the cause of the disability must be a sickness. It has to be a sickness of a certain type. It's not just any sickness. If you complain because you have headaches every day or something, maybe you don't qualify. Because it's trying to establish, very rationally it seems to me, trying to establish a threshold of significance or severity, if you will. I don't see why that's not all talking about the kind of sickness we have as opposed to when did you first suffer from it. The cause of disability must be a sickness that requires and receives physician's care. What does that tell you about the date? I think it tells me that before it is a total disability as defined by this policy, it must require and receive. We're supposed to construe these contracts against the insurance company when it's a reasonable interpretation. When it's ambiguous. So it's badly written. It's badly drafted. I don't think that this provision is ambiguous. The district court didn't. It is ambiguous because requires doesn't mean got. Receives requires medical care. If I asked you whether cancer is a condition that requires medical care, you would say yes. As an insurer, I would then determine whether that applicant received physician's care because that's part of the definition of sickness. That is not part of the definition of sickness. That's ridiculous. We don't define sickness as receiving medical attention. The policy does state it does define injury and sickness as a condition that requires and receives. It does require it. He eventually got it and he receives medical care. He didn't get it first, now he receives regular care. It doesn't say you're not sick until you receive medical care. That's the part that I'm stuck on. It doesn't have a temporal element in there. You could have put it in there. You could have said nobody is deemed to be sick until they've gone to the doctor. But even the district court didn't want to say that. The district court says to be sure sometimes people don't see a doctor for a significant period of time. One would wonder why we would read a temporal rule into the requires and receives medical care when the policy has got an explicit temporal rule. 30 days after disability begins, then proof within 90 days. You would think that you would look to explicit temporal rules to find temporal rules. Maybe that's simple minded. That's also something that we argued. Mr. Berg, of course, there's no medical evidence between 2007 when he ceased working as a pit broker and February 2010. No medical evidence whatsoever. There's lay evidence. His dentist said he saw his hand tremble. Why is his dentist not a medical person? That's not medical evidence. What? You shouldn't really say that. It's a neurological condition. But Berg testified that he had to quit his job because he couldn't write because his hands were shaking. Why isn't that perfectly good evidence? There is no medical evidence of that. Where's the requirement of expert testimony only from whatever the medical professional is, I suppose. A dentist not counting, in your view, maybe a general practitioner does or doesn't count, a neurologist does here. The policy... The policy doesn't call for medical verification within the 30 days. That's true. It requires proof of loss. And there are time limits. Lay testimony about how people feel. There are time limits on notice of claim and proof of loss. Is there a debate as to whether he has essential tremor? Yes, actually, that is disputed. I know in the reply it was stated it's undisputed, but it is disputed. So you don't think he has essential tremor? We don't think there's sufficient evidence We don't think there's sufficient evidence for him to prevail that he had a condition between 2007 Today, I'm saying. Oh, no, we agree. And, in fact, Mr. Berge is receiving benefits. Well, it had to start sometime, didn't it? So you think his hands are shaking, he loses his job because of caffeine. But as the misfortune later, he gets essential tremor. Is that your argument? I don't think it's... I mean, is it obvious he had essential tremor when he lost his job, rather than an independent cause of uncontrollable shaking of his hands? He didn't lose his job. He closed his job. He sold his seat. So you think his hands were not shaking, or they were shaking for a reason unrelated to essential tremor? Well, there's certainly no medical evidence that his hands were shaking. And, you know, if his condition was so bad that he couldn't do his life's work... But that just takes us back to the 30-day clause. If you want to see a need for contemporaneous medical evidence, why didn't you just defend this by standing on the 30-day clause? And we did. We argued that summary judgment is... Well, except... Mr. Flom says that you made this argument in a motion to narrow the issues, which is a little weird. District judge ignores it, and then you file a motion for summary judgment, not mentioning the timing problem. Is that a correct description of what happened? Not quite. The motion to narrow issues was asserted by the plaintiff, and the plaintiff had requested a partial motion for partial summary judgment. The district court made it clear that in deciding that Rule 16 motion, the district court was applying the rules applicable to summary judgment. So the district court determined, based on summary judgment rules, that Mr. Berg's occupation at the time of total disability... It's completely irrelevant. When you filed your motion for summary judgment, did you say that this claim was untimely because it was made more than 90 days after the disability began? We did not renew that argument because it was already presented in partial summary judgment. I don't... This was not a partial summary judgment, though. This is the strangest order from a district court I've ever seen, and it doesn't... It's expressly not. He calls it Rule 16 issue narrowing standard, and he says he's applying familiar Rule 56 principles to frame the analysis, but he's not in any way handling this. In fact, there would be issues of fact that you'd have to worry about. There's how much is in the record, how does it relate to discovery, how does it relate to a Rule 26 conference. I mean, there are any number of things that if this really were partial summary judgment would look different. I acknowledge that both counsel and I at the district court level thought that the Rule 16 procedure was unusual. I'm sure you did. I don't know that there's much you could have done about it, but it was very unusual. But we did brief it as summary judgment. But it wasn't summary judgment, though. That's the problem. And so when it's not... When the timing isn't addressed and you don't bring up what may, in your view, have been a clear winner of an argument, I don't know how we can regard it as anything but forfeited. The summary judgment, the second summary judgment, the basis for that was that based on the court's prior legal ruling, judgment is required in favor of defendants, and the plaintiff did not oppose. Did not oppose that. But none of those four grounds talks about this timing point. He has it in, you know, bullet points, practically. Five points. And so the plaintiffs say, well, if you've narrowed the issues that far, let's just go up on appeal. That's what happened. The court had made legal rulings that essentially ended the case. Right. And so the summary judgment was to close out any remaining issues to which the plaintiff did not object. Okay. I understand. So thank you very much. Thank you. Anything further, Mr. Flom? Nothing further, Your Honor. All right. And I don't think so. Thanks to both counsel. We'll take the case under ...